IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JAMES DEAN BLOOMER, as the surviving son of James Wright Bloomer and as the Administrator of the ESTATE OF JAMES WRIGHT BLOOMER,,**<br><br>Plaintiffs,<br><br>v.<br><br>**HMG PARK MANOR OF WESTWOOD, LLC, and HMG SERVICES, LLC,**<br><br>Defendants. | Case No. 24-2059-JAR |

## MEMORANDUM AND ORDER

Plaintiffs James Dean Bloomer, as the surviving child of decedent James Wright Bloomer; and the Estate of James Wright Bloomer, through James Dean Bloomer Jr. as Administrator of the Estate, bring this diversity action against Defendants HMG Park Manor of Westwood, LLC and HMG Services, LLC. Plaintiffs allege wrongful death and survival claims under Kansas law arising out of decedent James Wright Bloomer's treatment at a skilled nursing facility, HMG Park Manor of Westwood, LLC d/b/a Tanglewood Nursing and Rehabilitation ("Tanglewood"), located in Topeka, Kansas. Before the Court is Plaintiffs' *Daubert* Motion— and Suggestions in Support to Exclude Certain Opinions of Defendants' Retained Expert Jeffrey A. Kerr DO (Doc. 55). The motion is fully briefed, and the Court is prepared to rule. For the reasons described below, the Court denies Plaintiffs' motion to exclude.

**I.     Background**

Tanglewood is a skilled nursing facility located in Topeka, Kansas. Tanglewood admitted James Wright Bloomer on February 8, 2022, under the care of Dr. James Rider. Mr. Bloomer was later admitted to Stormont Vail Hospital on April 8, 2022, and then discharged to

Plaza West Regional Health Center on April 21, 2022. At 16:45 on April 22, 2022, Mr. Bloomer passed away. Plaintiffs in this case allege that both Defendants Tanglewood and HMG Services, LLC breached the following duties of care to Mr. Bloomer: (1) admitting Mr. Bloomer when they knew Tanglewood could not meet his needs; (2) failing to provide accurate and timely assessments; (3) failing to update the care plan; (4) failing to notify the physician that Mr. Bloomer's catheter was leaking and changed three times; and (5) failing to provide an additional registered nurse for each shift on April 1–4, and April 5–8. Plaintiffs claim that Mr. Bloomer's death was proximately caused by Defendants' breach of these duties.

Defendants designated Dr. Jeffery A. Kerr as a medical expert in this case. After reviewing the medical records and legal documents, he completed an expert report. In his report, Dr. Kerr listed the many records he reviewed and then constructed a timeline for Mr. Bloomer's care from June 16, 2018, until his death on April 22, 2022. He followed that 16-page timeline with a summary list of four opinions on causation and five rebuttal opinions to Plaintiffs' expert witnesses.

## II. Standard

Plaintiffs move to exclude two opinions rendered by Dr. Kerr under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[1] Rule 702 governs the admissibility of expert witness testimony by allowing someone "who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion."[2] The proponent of the expert's opinion must:

---

[1] 509 U.S. 579 (1993).

[2] Fed. R. Evid. 702.

2

> [D]emonstrate[] to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[3]

In *Daubert*, the Supreme Court held that Rule 702 imposes a gatekeeping responsibility upon trial courts to ensure that proposed expert testimony "is not only relevant, but reliable."[4]

In performing this gatekeeping function, the court "generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[5] This Court has "'wide discretion' in determining whether a witness's experience is sufficient to qualify him as an expert."[6] "[A]s long as an expert stays 'within the reasonable confines of his subject area,' [Tenth Circuit] case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'"[7]

If the expert is sufficiently qualified, the court must next determine whether the expert's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."[8] The Supreme Court in *Daubert* set forth a non-exhaustive list of four factors that courts may

---

[3] *Id.*

[4] 509 U.S. at 589.

[5] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702).

[6] *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 513 (10th Cir. 2009).

[7] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (second alteration in original) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)).

[8] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 592).

consider in determining the reliability of the proffered expert testimony: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; and (4) its degree of general acceptance in the relevant scientific community.[9]

Finally, the court must determine whether the expert testimony is sufficiently "relevant to the task at hand."[10] Under Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."[11] "Relevant expert testimony must 'logically advance[] a material aspect of the case' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'"[12] "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[13] In assessing whether expert testimony will assist the jury, the court should consider whether the testimony "is within the juror's common knowledge and experience."[14]

It is within the court's discretion to determine how to perform its gatekeeping function under *Daubert*.[15] The most common method for fulfilling this function is a *Daubert* hearing, although it is not specifically mandated.[16] Here, no party has requested a hearing on this motion.

---

[9] *Daubert*, 509 U.S. at 593–94.

[10] *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597).

[11] Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

[12] *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration in original) (first quoting *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005); and then quoting *Daubert*, 509 U.S. at 591).

[13] *Daubert*, 509 U.S. at 591 (quoting 3 Weinstein & Berger ¶ 702[02] (1988)).

[14] *Garcia*, 635 F.3d at 476–77 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)).

[15] *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[16] *Id.*

And the motion to exclude is narrow—it asks the Court to deem conclusory and without support two of Dr. Kerr's opinions from his expert report. The Court finds that it can perform its gatekeeping function on this narrow motion by examining Dr. Kerr's expert report and the parties' briefs.

### III.   Discussion

Plaintiffs do not challenge Dr. Kerr's qualifications to opine on the cause of Mr. Bloomer's death. The Court has reviewed his CV[17] and finds that he is qualified. Dr. Kerr has been a physician since 1985 in many hospital settings. He is board certified in family practice, with an added qualification in geriatrics. He is also a certified medical director for long term care. He has been affiliated with several different nursing facilities during most of his tenure as a physician, and he has served as an expert witness in many cases since 2020. Dr. Kerr is qualified to render an opinion on causation in this matter.

The Court also finds that Dr. Kerr's opinion is relevant to an element in the case—whether Defendants' alleged breaches of the standard of care caused Mr. Bloomer's death.[18] His testimony will certainly help the trier of fact in making that determination, which is one that is not within the common knowledge and experience of a layperson.

The Court therefore turns to the remaining issue of reliability, which is the focus of Plaintiffs' motion to exclude. First, Plaintiffs object to the fourth statement in Dr. Kerr's Summary of Opinions: "I agree with the death certificate diagnoses by Dr. Rider." Second, Plaintiffs object to the last sentence in one of Dr. Kerr's rebuttal opinions, that "Mr. Bloomer's urinary tract infection was not the result of any action or inaction on the part of the nursing staff

---

[17] Doc. 55-1 at 30–45.

[18] *See, e.g.*, *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008) (stating elements of wrongful death claim under Kansas law).

but was a common and foreseeable complication of Mr. Bloomer's chronic foley catheter status."[19] Plaintiffs assert that these opinions are made without analysis and are therefore conclusory. Defendants correctly respond that these are two of several opinions that are based on Dr. Kerr's preceding analysis in the report of Mr. Bloomer's medical records for the four years leading up to his death.

Dr. Kerr begins his report by listing a multitude of deposition transcripts, exhibits, pleadings, medical records, and other documents he reviewed before rendering his opinions. Dr. Kerr noted that the death certificate states Mr. Bloomer's cause of death was "[r]espiratory failure, cardiac arrest, congestive heart failure, coronary artery disease with significant condition of history of confirmed Covid-19. Natural death. No autopsy. Cremation. Certifying physician is James Rider DO."[20] Dr. Kerr considered Mr. Bloomer's extensive medical history and medications, and constructed an exhaustive timeline of his treatment going back to June 16, 2018. Based on his review of these records—covering an approximately four-year period of time—Dr. Kerr provided a summary of his opinions, including that he agreed with Dr. Rider's cause-of-death statement on the death certificate. Thus, his opinion based on the preceding 16-page recitation of Mr. Bloomer's medical history was not conclusory.

The Court finds that Dr. Kerr's review of Mr. Bloomer's medical records, in light of his training and experience that focuses on geriatric care, was sufficient for him to offer a reliable opinion on Mr. Bloomer's cause of death. Plaintiffs fail to identify a specific reliability issue in the records Dr. Kerr relied on in formulating his opinions. To the extent Plaintiffs maintain that there are other facts that Dr. Kerr failed to consider, or that the timeline is flawed or missing

---

[19] Doc. 55-1 at 22 ¶ 5.e.

[20] *Id.* at 8.

information, those are matters for cross-examination because they go to the weight of the testimony, not its admissibility.[21] The Court has reviewed the report and finds no "great analytical gap between the data and opinion proffered" that would render it unreliable.[22] Moreover, Dr. Kerr was not required "to categorically exclude each and every possible alternative cause—to require otherwise would mean that few experts would ever be able to testify."[23] Instead, he was required to "provide objective reasons for eliminating alternative causes."[24] As described above, on the narrow issue raised in this motion, which is based solely on Dr. Kerr's expert report and not on any deposition testimony, the Court finds that he has provided an objectively reliable basis for his opinion.

For all of these reasons, Plaintiffs' motion to exclude is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' *Daubert* Motion—and Suggestions in Support to Exclude Certain Opinions of Defendants' Retained Expert Jeffrey A. Kerr DO (Doc. 55) is **denied**.

**IT IS SO ORDERED.**

Dated: August 22, 2025

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE

---

[21] *See, e.g.*, *State Farm Fire & Cas. Co. v. Bell*, 30 F. Supp. 3d 1085, 1097 (D. Kan. 2014).

[22] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[23] *Etherton v. Owners Ins.*, 829 F.3d 1209, 1221 (10th Cir. 2016) (quoting *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 n.6 (10th Cir. 2005)).

[24] *Id.* (quoting *Bitler*, 400 F.3d at 1237).